Good morning, Your Honors, and may it please the Court. My name is Bradley Bauer, and I'm the attorney for the petitioner in this matter, Mr. William Wilson. To begin with, Your Honor, I'd like to bring attention to the most salient issue in this case, whether the defendant's rush to examine the plaintiff resulted in an abuse of Section 12 of the Illinois Workers' Compensation Act. In this matter, our defendant did everything right. He was injured at work on August 13, 2013. He immediately sought treatment on that same day with a Dr. Bannuti. He followed up some two weeks later. At his initial appointment with Dr. Bannuti, he complained of knee pain. At the second visit on August 27, 2013, he then began to complain of low back pain. Based on this complaint of low back pain, Dr. Bannuti gave the opinion that Mr. Wilson should seek treatment from a back specialist. He then continued to treat with Dr. Bannuti for the knee pain related to the incident. He treated with Dr. Bannuti two separate times after this August 27 visit, on September 17, 2013 and on October 8, 2017. At every visit thereafter, Dr. Bannuti made clear that he believed the petitioner, Mr. Wilson, should seek treatment from a spinal specialist for his pain. At no point during his treatment did Mr. Bannuti give any statement with regard to causation of this back pain because Dr. Bannuti is a knee specialist and did not feel, well, I cannot speak to why he did not, but he did not. Our petitioner then sought treatment with his family doctor, a Dr. Cady. Dr. Cady was in agreeance with Dr. Bannuti that he needed to seek treatment from a spinal specialist. Instead of getting to seek that treatment, the defendants then rushed to set up an independent medical examination with a Dr. Layman. This appointment was made prior to any attempt or any potential opportunity for my client to seek that proper treatment with the spinal specialist as specifically discussed in Section 8 of the Workers' Compensation Act, which calls for the injured worker to be able to receive all Upon this examination by Dr. Layman, which cut off all sort of opportunity for treatment by declaring that all back pain issues were not related to the accident, our petitioner was left in a position where he was not able to seek the treatment necessary. He was stuck with no insurance, no money, no job, and no opportunity to seek the medical treatment that he needed. But you're here appealing the commission's decision, and you're arguing to us that the decision is against the manifest weight of the evidence. That is correct, your honor. I will address the argument with regard to the lumbar spine and whether it is causally related. Let me ask you a pointed question to cut to the chase. Didn't the commission have some problems with the claimant's credibility? Didn't they specifically conflicting, alleged conflicting descriptions of the accident? Yes, there was a specific, there was phrasing that was criticized by both the arbitrator and the commission, your honor. That phrasing was that at the initial report that which he submitted to his employer was that he had stepped, he was, I'll just kind of frame the accident, how it occurred, your honors. On August 13, 2013, my client was working as a forklift operator. He was on a forklift that was about 30 inches off the ground. He exited the platform of the forklift. Upon exiting, he immediately felt right knee pain. He then went to report this pain to his employer as required. When he reported it to his employer, the phrasing that is indicated in the form is that he stepped off the forklift. Now, there is a spinal specialist in this case. There's actually only one spinal specialist in this case. It's not the independent medical examiner. It's Dr. Matt Gourdet. At his appointment with Dr. Gourdet, the petitioner used the phrasing, hop off the forklift, your honors. Now, stepping off and hopping off may include some different activities. However, every time that he has discussed the accident, he has indicated that he was exiting the forklift. Now, the words are different, and I will not dispute that the words are different. However, the client's report has been consistent that he was injured in exiting the forklift, which was 30 inches off the ground. Our client did have prior injuries. He was a 55-year-old man, 6'2", approximately 280 pounds. He had a prior back fusion about 25 years prior to the accident, and he had reported knee issues prior to the accident. Now, in the decision, the arbitrator What were those knee issues? Was it a knee replacement? I believe he did have a knee replacement, your honors. However, it's undisputed that prior to this accident, on August 13, 2013, he was working with no restrictions whatsoever in his position. There's a bigger problem that I'd like you to address here, because the commission, in addition to jumping down, stepping down, okay, I think some of these are different interpretations. What do you make about this? The commission, including the medical evidence, did not support the claim the defendant's lumbar spinal condition was a result of the accident. The post-accident MRI on September 12, 2013, was clinically identical to the MRI taken on February 5, 2008. The claimant's own treating physician, Dr. Benuti, reported no acute pathology on September 13 MRI, and the treating doctor replying the condition of the claimant's lumbar spine was a result of chronic degenerative conditions. Now, how do you overcome those findings? With regard to that, your honor, Dr. Benuti was a knee doctor and believed that he should be referred to a spinal specialist. That spinal specialist, my client did have the opportunity to see a spinal specialist on one time. The problem with those MRIs is not that they were identical, it's that they would be hard to read. Dr. Garnett indicated that the claimant's fusion that he underwent involved steffi plates. These are metal plates that are placed onto the spine to provide support for injured areas. Dr. Garnett indicated that with these steffi plates in place, he was not able to opine what the specific damage was, because it occluded his vision in the particular MRI. Well, the specific damage is in fact not in evidence. I take that back, your honor. He basically said, I cannot see properly what is going on here, and I'd like to remove these plates in order to get a proper understanding of what is going on. With these in place, it's basically blocking any view of that spine. Okay, knowing that the spine is blocked, I can see why an opposite conclusion is clearly apparent to the one drawn by the commission. With regard to back injuries, your honor, Dr. Lehman indicated that petitioners always feel back pain instantly. However, it has been my experience, and with regard to medical science, that back injuries can develop over time. It's been your experience? I misspoke, your honor. Medical doctors, including Dr. Garnett, have given the opinion that back injuries can develop over time, that an injury can occur on one date, and subsequent back pain and injuries developed and first reported after that date can be related to that accident. Now, Dr. Garnett is the only spinal specialist here. Dr. Lehman, who is essentially the star witness in the medical documents for the respondent, is not a spinal specialist. He is, in fact, a knee doctor. The reason I know he's not a spinal specialist is because he explicitly admitted so in his deposition. He further admitted that he refers all back injuries out. He then went on to state multiple opinions related to these specific back injuries that were outside of his expertise. He then went on to give opinions related to the medical degree of certainty for which job estimators do their job. He gave opinions that I do not believe he was qualified to give. Not only that, his credibility is greatly affected by the findings under which we discovered only by happenstance in December of 2014 when this case was pending before the commission. Those findings, which I believe are very relevant to Dr. Lehman's 10 months prior to this examination, he did not perform a physical examination on a claimant in the exact same situation, a worker's compensation injury. He indicated that he gave extensive physical examinations. However, he then... This is some other unrelated case? This is the unrelated case. In this instant case, your honor, this brought it to our attention. Our petitioner had indicated and testified that Dr. Lehman gave a really basic exam, did some leg lifts, reviewed x-rays, and then basically listened to him explain the incident at issue. Did this come out before the commission? The commission's decision was dated December 12, 2014, your honor. We discovered this fact on December 10, 2014. That was your motion to your honor. The decision is dated December 12, 2014. Realistically, the commission did not see that motion prior to issuing his decision because... What are you supposed to do with 19 year there? That was related to supplementing the record for respondent fraud. We took the position that by failing to disclose this particular censure... But you're not telling me what you're supposed to do with 19E. 19E specifically says there shall be no evidence introduced by the parties before the commission on review. That is correct, your honor. We believe that fraud was an exception to that rule. You got a case that says something? I believe it's explicitly listed in the statute, your honor. I would have to... No, it's not. Don't make this stuff up for us, okay? Yes, I apologize, your honor. To be honest, this was the statute cited by my boss. I reported it as I was supposed to report it. My position was that this was fraud in front of a tribunal, and my take is if I smell any sort of fraud, I want to bring it to the court's attention because I don't want to be involved in anything related to fraud. The defendant's counsel took a different position. He took the position that he knew of it, did not disclose it to us, and that despite knowing of this fraud, continued to rely on Dr. Layman's position. Now this fraud... Dr. Layman admitted to committed perjury on September 25, 2014 and agreed upon censure. That is after the arbitration in this case. So is that in the record? The fraud, your honor? No, this allegation you said about it, acknowledging perjury. Yes, your honor, that was the motion to supplement with which we submitted on December 10, 2014. Was it ever admitted or received by the court? It was denied by the Compensation Commission approximately one year after their decision. It was denied in December of 2015, your honor. So this was all yours, the record. This is not in the record, right? It was not in the record at the time the Commission issued their decision because we mailed it on December 10th when we first found out and their decision was dated December 12th. Well, when did it get in the record at all? I believe it was denied by the Commission, the motion to supplement. Well, if it's not in the record, how can you be referring to it? Your honor, we are appealing that decision by the Commission and I believe that it's very relevant that fraud has been committed here. I would need to review the record, but I believe it is in there somewhere. I know it was attached to documents. It's in our brief. We have included it as an attachment. We basically discovered fraud. We tried to submit it as soon as we can because of the mailing situation. The work comp did not receive it. You don't want to spend all your time on something that is not in the record. I suggest you wrap up and again tell us succinctly why the decision itself is against the manifest way of the evidence. The records show that he sought treatment immediately after the accident. Just a mere few weeks after the accident, he reported back pain. This back pain continued to persist. He then is not able to see his final specialist until he gets to see Dr. Gornett. This back pain still exists. Dr. Gornett, the only spinal specialist in this case, the only person who is expressly dealing with spinal injuries on a regular basis, reports that he believes the injury is causally related to the accident. You've got his causation opinion and you've got what you're representing to be the claimant testifying consistently over the mechanism and the nature of his injuries, correct? That is correct, your honor. The claimant could have further developed the medical evidence if at all possible had the rush to examine not occurred under section 12. I believe that he was robbed of his opportunity to get the evidence needed. The defense through their actions essentially took the ball and ran home leaving my client left in the middle with nothing left to do. Your time is up. Thank you, your honor. May it please the court, my name is Tim Stile and I represent the respondent in this case. We believe that there are two standards of review for this court to address. There is no dispute that the standard of review is manifest. We have the evidence when the factual issue of petitioner's lumbar condition is in dispute. The second issue that we have raised is concerning the question of jurisdiction with respect to the commission's order that denied petitioner's motion to supplement the record and we can get to that here in a little bit but going to the main issue here with manifest weight of the evidence, we believe there is no dispute petitioner had a work-related accident. On his application for adjustment of claim, he lists that he was exiting the forklift. What petitioner is in dispute with is the commission's characterization as to how his accident occurred. The commission adopted the accident of him stepping off of the forklift. This would be consistent with the accident history that he provided to his employer in the accident report form in his recorded statement to the insurance company and in his first treatment on the day of the accident when he saw Dr. Benutti. Petitioner subsequently gave two different accident histories where he told Dr. Katie that he hopped off the forklift and he told Dr. Gornett that he jumped off the forklift. Now petitioner argues in his briefs that it's just common sense or a matter of semantics that stepping off the forklift is the same thing as hopping or jumping off a forklift. We disagree. Even petitioner's own testimony is in disagreement with this position. In the record on page SCC87, petitioner testified there is a mechanical difference between stepping and jumping off of a forklift. The evidence introduced at trial supports the commission's decision that the lumbar complaints are not related to the accident. During the first treatment on August 13, 2013, the day of the accident, he did not describe any lumbar pain complaints. In his recorded statement, he was specifically asked if he hurt anywhere else besides his knee, but she responded that he did not. While he admitted that he had prior back surgery, approximately 25 years prior to his accident, he stated that he never had back pain during the next 25 years up until the day of the accident. He denied he saw Dr. Kuby in 2008 for his back pain. After he denied this, this is when respondent introduced into evidence at trial showing that he did in fact treat for his back in 2007-2008. His back pain was significant enough that in 2008 he had a lumbar MRI. In 2013, after this accident, he has another lumbar MRI and the radiologist compared this one to the prior MRI of 2008 and read it as no significant interval change since February 5, 2008. Petitioner testified, and this is found on SEC63, that the 2013 MRI was the first time he had any significant back pain since the accident. So then we go to that September 17, 2013 visit with Dr. Benuti. Dr. Benuti reviewed the MRI. There is also a discussion with Petitioner concerning his back pain that Petitioner attributed to the MRI. After this explanation by Petitioner, Dr. Benuti said he could not explain his ongoing leg and back pain complaints. However, on two occasions on that same record on that visit, he questioned Petitioner's significant secondary issues of pain. So while Dr. Benuti was not able to explain the lumbar complaints, he was certainly aware of Petitioner's forklift incident and did not causally connect Petitioner's Is Benuti ever opined that the condition of the claimant's lumbar spine was the result of chronic degenerative conditions? He did, and then this goes to page... But wouldn't that be significant if his treating physician says that? I believe it is significant, Your Honor. This is on SEC118. It says exactly, he has chronic back discomfort and leg pain. SEC120, Dr. Benuti noted Petitioner had no acute pathology. SEC121, Dr. Benuti noted Petitioner had a long history of back problems. So this goes to, I don't know if it, hopefully this Court agrees that this merits much discussion about the third issue raised by Petitioner and what he raised as his first issue in front of you today is that we did this, performed this IME too quickly. We would just like to remind the Court that on September 17, Dr. Benuti questioned significant secondary issues of pain. He's the treating physician, he has a long, he has a history of treating Petitioner before this accident and that our IME was scheduled and performed a month after Dr. Benuti had raised this opinion as to secondary issues of pain. Well, is there any timeline for SEC112? I'm not aware of any case law that limits or places a time frame that a respondent has 30, 60, 90 days after an accident occurs. Literally, you could schedule a 46th day after the 45th day of the requirement of reporting. I would agree with that, Your Honor. There's no prohibition in place. There's no prohibition. Going to, after the facts that the Commission had more than to rely on, I do believe it's disturbing and I would like to make sure to point out a number of false or completely unfounded allegations made by Mr. Drummond in his brief and reply brief. Dr. Lehman is not a self-admitted perjurer. There's nowhere in the record as to that. Dr. Lehman has never been found to have committed fraud in an unrelated case. He has never admitted that he lied on an examination to the Missouri Board of Appealing Arts. Dr. Lehman has never been censured. And I'll be quick. What he was, he was reprimanded on an unrelated case. The issue is whether the Commission properly denied their motion to supplement the record. If the Commission was correct, there's nothing about Lehman's alleged fraud that's even in front of it. I agree. In fact, Your Honor, the only reason I bring this up is I am, I can't really describe it, but just the number of falsehoods that were in the brief that were presented to this court. It's just, I'll just leave it alone at that. You're right. The question is, was the Commission correct in denying the motion to supplement the record? Yes or no and why? Okay. I would say that they were correct in denying the motion. I would also like to point out there's no certificate of service, so the question is, was there even a proper motion in front of the Commission in the first place? So if there was a proper motion, if this court deems that there was a proper motion in front of the Commission, the Commission did properly deny the motion to supplement the record as there's no case law to support Petitioner's motion that allowed him to supplement the record. What is an avenue that can be taken in a fact pattern such as this where there is this allegation, and again it's a mere allegation, that somehow some recently discovered evidence which would go to perhaps credibility should be considered? Is there any avenue at all? I do believe under Section 19B of the Act, it does indicate that the Commission's decision is final, absent a showing of fraud. I am not aware though of any specific provisions laying out the ground rules of how is it that one, either side, can go about showing this fraud. It is an interesting issue. I have seen prior cases, but there's no hearing, per se, that has been found on this matter, on this motion. I do believe there is fraud involved. Does the Commission have the right to remand the case back to the arbitrator to take additional evidence? On its own motion, they can reconsider if there's clerical errors. I'm not aware of a provision which they can remand it to the Commission to consider additional evidence. It's not remand to the Commission, it's remand to the arbitrator. Remand to the, I'm sorry, I misspoke, remand to the arbitrator. So to some extent, it stands out there, but can it be made operative, that section? Well, what can happen is there's Section 25.5 of the Act, that's the fraud provision under the Illinois Workers' Compensation Act. There are appointed, there are appointees in the Fraud Investigative Unit, and I believe that from there is the civil damages, criminal damages that can be rendered for a remedy on that standpoint. Could they also contact the Fraud Insurance Noncompliance Unit of the Illinois Department of Insurance? Is that something they could do? That's what I was getting at under Section 25.5 of the Act, that there's the Fraud Investigative Unit. So there's some potential remedy? Correct. Okay. Should this court find it has jurisdiction on this appeal, respond to it respectfully, request this Commission decision be affirmed in its entirety. The Commission had more than sufficient facts to make the determination it did. Based on the mechanism of injury, initial complaints of petitioner, the lumbar MRI comparisons, Dr. Benuti's September 17, 2013 opinion of finding no acute pathology, as well as the persuasive opinions of Dr. Lehman, the Commission's decision was not against the manifest point of the evidence. Thank you. You had a paragraph in your brief that said that you want 137 sanctions. 137 is a sanction for the trial court. It's not a sanction to be administered by the appellate court. Ours is 385, and you didn't cite a single case in support of it, so it's waived under 341H. I understand. I understand why you did it. Thank you. Thank you, counsel. Counsel, you may reply. May it please the Court. In his statements, defendant's counsel indicated that petitioner included numerous falsehoods in their brief. Specifically, he cited two falsehoods related to Dr. Lehman's reprimand by the Missouri State Board of Healing Arts. That reprimand was issued by an agreeance with Dr. Lehman on September 25, 2014. In that reprimand, he agreed that he did not perform physical... Could you tell me what this has to do with the question of whether it could be received by the Commission or not? You guys are beating a dead horse without ever figuring out if you're in the right stable. Understood, Your Honor. With regard to whether it should have been received by the Commission, the motion to supplement was sent on December 10, 2014. My secretary sent it via regular U.S. mail, which I would have preferred that not have occurred. It did occur, and there is no... I'm not interested in the certificate of service. I'm interested in whether the Commission could even entertain a motion to submit additional evidence of this alleged fraud before it. And if they can, what's your authority for it? The defense counsel referenced section 25.5, specifically A2,  We're talking about the process here, I believe. Justice Hoffman is talking about the process. Was there a certificate? A motion? With regard to the motion that was submitted on September 10, Your Honor, no, there was not. It was not submitted with a return certificate requested. We do have a business record that we've included in the record when we submitted it that showed that it was submitted. My secretary did not send it with that, and it was obviously a crucial error because if we had that certificate, we could be able to show that it was submitted other than through our business record. With regard to the injuries, Your Honors, the lumbar spine was normal and had no sort of limitations discussed in the August 13, 2017 visit. By August 2017, there are multiple abnormalities mentioned, and those abnormalities continue to be mentioned by Dr. Bannuti. Now, Dr. Bannuti did use a phrase of chronic or degenerative back disease. That is the specific diagnosis that he was discussing, but it was not related to causation. He did not say this is specifically due to the degenerative nature of the issue. He did not say these new symptoms and this new symptomology, which was not present on August 13, but did become present on August 27, 2013, did not relate to the injury. He did not give any sort of statement with regard to that. The only doctors who did give any sort of opinion as to causation for the back injury was Dr. Richard Lehman, the independent medical examiner, and Dr. Matthew Gornett, the spinal specialist. I believe that there are a number of problems with Dr. Lehman's opinion that greatly affect his credibility. Now, the arbitrator is the one to determine credibility at the time of the arbitration. However, the arbitrator could not have determined credibility with regard to this reprimand. Who determines credibility? The arbitrator at the time of the arbitration, Your Honor, and the commission after the arbitrator. Continue. I misspoke there, Your Honor. With regard to the back injury, the claimant sees Dr. Gornett. Dr. Gornett gives a clear opinion that he believes the injury is related to the accident. He does discuss the MRIs that were performed in 2008 and 2013. There's no dispute that Dr. Bernuti indicated that they were similar and Dr. Lehman indicated they were similar. Dr. Gornett also indicated that there were similarities, but that he could not distinguish what was exactly going on at the L5-S1 area, which is the particularly affected area, because of the stephy plates, which included his ability to do so. Had our client been able to seek the proper treatment, we would not be here. However, there is no, with regard to the Section 12 argument, there is no specific time frame. However, multiple doctors, that being Dr. Bernuti and Dr. Cady, recommended that our client see a spinal specialist. Thank you, Your Honors. Thank you, counsel, both for your arguments in this matter. We'll take them under advisement.